1

2

3

4

5

6

7
**UNITED STATES DISTRICT COURT**

8
**EASTERN DISTRICT OF CALIFORNIA**

9

10
TYLER JAMES SUONG,                          )   Case No.: 1:11-cv-01480-LJO-JLT
                                            )
11
            Petitioner,                     )   FINDINGS AND RECOMMENDATIONS TO
                                            )   DENY PETITION FOR WRIT OF HABEAS
12
        v.                                  )   CORPUS (Doc. 1)
                                            )
13
MATTHEW CATE, Secretary, CDCR,              )
                                            )   ORDER DIRECTING THAT OBJECTIONS BE
14
            Respondent.                     )   FILED WITHIN TWENTY-ONE DAYS
                                            )
15

16
        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17
pursuant to 28 U.S.C. § 2254.

18
                            **PROCEDURAL HISTORY**

19
        Petitioner is in custody of the California Department of Corrections and Rehabilitation

20
("CDCR") serving an indeterminate sentence of 75-years-to-life pursuant to a judgment of the Superior

21
Court of California, County of Fresno (the "Superior Court") for his 2007 conviction following a jury

22
trial of eight counts of sexual abuse against a child.  (Doc. 14, Ex. A ("Ex. A")).

23
        Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth Appellate

24
District (the "5th DCA"), which, in an unpublished decision, affirmed Petitioner's judgment of

25
conviction on March 23, 2009.  (Ex. A).   Petitioner then filed a petition for review in the California

26
Supreme Court that was summarily denied on May 13, 2009.  (Lodged Document ("LD") 5, 6).

27
        On January 15, 2010, Petitioner filed a state habeas petition in the California Supreme Court,

28
which was denied, on February 24, 2010.  (LD 7, 8).  Petitioner then filed a habeas petition in the 5th

1  DCA, which the appellate court denied on August 23, 2010. (LD 9, 10). On October 14, 2010,

2  Petitioner filed a habeas petition in the California Supreme Court that was denied on July 20, 2011.

3  (LD 11, 12).

4       On September 6, 2011, Petitioner filed the instant petition. (Doc. 1). Respondent's answer was

5  filed on January 1, 2012. (Doc. 14). On March 21, 2012, Petitioner filed his Traverse. (Doc. 18).

6       Respondent does not contend that any of the claims in the instant petition are unexhausted.

7  (Doc. 14, p. 7).

8  **FACTUAL BACKGROUND**

9  The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

10
11  When Jane Doe I was in third grade, appellant, her father, began touching her sexually. This happened three or four times during that school year. This sexual conduct recurred when Jane Doe I was in sixth grade.

12
13  When Jane Doe I was around 13 years old, appellant forced her to have sexual intercourse with him. This started the summer before Jane Doe I entered ninth grade and occurred more than 20 times. Appellant also forced her to orally copulate him five or six times. Appellant told Jane Doe I that having sex with him was God's plan and that it was the only way they could be together in heaven. He told her not to tell anyone about God's plan because no one else would understand. Also, he could go to jail and she would go to hell.

14

15  In late October of her ninth grade year, Jane Doe I ran away from home. She returned about a week later but left to stay at her friend Ashley's house shortly thereafter. Jane Doe I told Ashley what had happened and Ashley in turn told her own mother. Ashley's mother took Jane Doe I to her school counselor to report the abuse.

16
17

18  Appellant is Jane Doe II's uncle. On multiple occasions, beginning when she was eight years old and in third grade, appellant touched Jane Doe II sexually. Jane Doe II did not inform law enforcement about any of these incidents until 2007 after receiving information about this case from appellant's wife.

19

20  Appellant testified in his own defense and denied ever having sexual contact with either Jane Doe I or Jane Doe II. Appellant's sister testified that she was best friends with her niece, Jane Doe II, and lived with Jane Doe II's family for a time. However, Jane Doe II never said anything to her about being molested by appellant. Appellant's sister also lived with appellant and Jane Doe I and again, the alleged victim never disclosed sexual abuse by appellant.

21
22

23
24  Appellant was convicted of the following offenses against Jane Doe I: three counts of lewd and lascivious acts with a child under 14 (Pen.Code,1 § 288, subd. (a)) in counts 1, 4 and 5; two counts of aggravated sexual abuse of a child (§ 269, subd. (a)(1))) in counts 2 and 3; and two counts of forcible oral copulation of a child (§ 288a, subd. (c)(2))) in counts 6 and 7. Appellant was convicted of having committed a lewd and lascivious act against a child under 14 (§ 288, subd. (a)) in count 8 against Jane Doe II. Appellant was sentenced to 15 years to life on the
25
26

27
28  ---
[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

2

1  principal term of count 2, consecutive terms of 15 years to life on counts 3, 6, 7 and 8, and
2  concurrent terms of 15 years to life on counts 1, 4 and 5 for a total of 75 years to life.

3  (Ex. A, pp. 2-3).

4  # DISCUSSION

5  ## I.   Jurisdiction

6  Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to

7  the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the

8  United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n.

9  7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

10  Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is

11  located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

12  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

13  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

14  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v.

15  Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other*

16  *grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after

17  statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore

18  governed by its provisions.

19  ## II.   Legal Standard of Review

20  A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

21  can show that the state court's adjudication of his claim:

22  (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
23        clearly established Federal law, as determined by the Supreme Court of the United States;
        or
24  (2) resulted in a decision that "was based on an unreasonable determination of the facts in light
        of the evidence presented in the State court proceeding.

25  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at

26  412-413.

27

28

3

1    A state court decision is "contrary to" clearly established federal law "if it applies a rule that

2  contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

3  that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."

4  Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406.  A state court

5  decision involves an "unreasonable application" of clearly established federal law "if the state court

6  applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner."  Id.,

7  quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(per curiam).

8    Consequently, a federal court may not grant habeas relief simply because the state court's

9  decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

10  Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams, 529 U.S. at 409).  In Harrington v.

11  Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable

12  application" of federal law is an objective test that turns on "whether it is possible that fairminded

13  jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  If

14  fairminded jurists could so disagree, habeas relief is precluded.  Richter, 131 S.Ct. at 786.   As the

15  Supreme Court of the United States has noted, AEDPA's standard of "contrary to, or involv[ing] an

16  unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose

17  of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in

18  the state criminal justice systems,'" and not as a means of error correction.  Id., quoting Jackson v.

19  Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens, J., concurring in judgment).  The

20  Supreme Court has "said time and again that 'an unreasonable application of federal law is different

21  from an incorrect application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).

22  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state

23  court's ruling on the claim being presented in federal court was so lacking in justification that there was

24  an error well understood and comprehended in existing law beyond any possibility of fairminded

25  disagreement."  Richter, 131 S.Ct. at 787-788.  Put another way, a state court's determination that a

26  claim lacks merit bars federal habeas relief so long as "fairminded jurists could disagree" on the state

27  court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

28    Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state

4

court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1398 ("This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at the same time–i.e., the record before the state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins, 539 U.S. at 520; Jeffries, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires considerable deference be given to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the claims on the merits but provided no reasoning for its decision, the federal court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th

5

Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Id., 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

### III.    Review of Petitioner's Claims.

The instant petition itself alleges the following as grounds for relief: (1) improper admission of expert testimony; (2) improper application of the statute of limitations; (3) insufficient evidence to support duress; (4) insufficient evidence of age of victim; and (5) ineffective assistance of trial and appellate counsel.

### A.  Admission of Expert Testimony

Petitioner first contends that the trial court erred in permitting an expert witness in psychology to testify regarding the behavior of children who have been sexually abused as this amounted to the expert witness vouching for the veracity of the child.  (Doc. 1, p. 4).  This contention is without merit.

#### 1.  The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

Dr. Randall Robinson, a clinical psychologist, testified for the prosecution on the Child Sexual Abuse Accommodation Syndrome (CSAAS). The CSAAS describes the behaviors of children who have been sexually abused. Its central purpose is "to explain why a child allows herself or

himself to be sexually abused and why he or she does not immediately or ever report the abuse." CSAAS assumes as its premise that the child has been sexually molested and describes behaviors common to abuse victims, behaviors that are often misinterpreted by adults.

Although inadmissible to prove that abuse occurred, CSAAS testimony is admissible for the limited purpose of disabusing a jury of misconceptions it might hold about how a child reacts to being molested. (People v. Patino (1994) 26 Cal.App.4th 1737, 1744.) Accordingly, two requirements have been imposed. "First, the expert's testimony must be narrowly tailored to the purpose for which it is admissible. In other words, the prosecution is obligated to 'identify the myth or misconception the evidence is designed to rebut' and the testimony must be limited to exposing the misconception by explaining why the child's behavior is not inconsistent with his or her having been abused." (People v. Bothel (1988) 205 Cal.App.3d 581, 587, overruled on other grounds in People v. Scott (1994) 9 Cal.4th 331, 348.) Thus, if the victim's credibility is placed in issue due to his or her paradoxical behavior, CSAAS testimony is admissible to help explain that behavior. (People v. Patino, supra, 26 Cal.App.4th at pp. 1744-1745.) For example, "where a child delays a significant period of time before reporting an incident or pattern of abuse, an expert could testify that such delayed reporting is not inconsistent with the secretive environment often created by an abuser who occupies a position of trust." (People v. Bowker (1988) 203 Cal.App.3d 385, 394.)

Second, the jury must be instructed that the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true. (People v. Bowker, supra, 203 Cal.App.3d at p. 394.) Rather, "[t]he evidence is admissible solely for the purpose of showing that the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested." (Ibid.)

Here, Dr. Robinson's testimony discussed the five component parts of the CSAAS and how children react to abuse in general. Dr. Robinson had never met either Jane Doe I or Jane Doe II and was unfamiliar with the particulars of the case. For the most part, her testimony complied with the CSAAS evidence guidelines and was consistent with what has been previously held to be admissible.

Appellant objects to one answer given by Dr. Robinson. When asked "In your training and experience, do children who are victimized by sexual abuse always tell the truth in regards to the abuse?" Dr. Robinson answered:

> "Children who have been abused sometimes-most of the time do not disclose the abuse. There's an indirect lie, I suppose, a lie by omission. When they do disclose the abuse, their report is valid."

According to appellant, "this testimony amounted to the expert improperly vouching for the credibility of those children alleged to be victims of sexual abuse."

The line between the impermissible use of expert testimony to prove the child was abused and the permissible use of such testimony to explain an abused child's paradoxical behavior is by no means a bright one. (People v. Gilbert (1992) 5 Cal.App.4th 1372, 1383-1384.) Here, the objected to testimony pushes that line. Rather than merely explaining an abused child's seemingly inconsistent behavior, Dr. Robinson's testimony implied that an abused child's report will be valid. Similar testimony in People v. Bothuel, supra, was found to be "troubling." (205 Cal.App.3d at p. 589, fn. 8.)

Nevertheless, it was clear that Dr. Robinson was not offering an opinion on the credibility of either Jane Doe I or Jane Doe II or on whether they had in fact been abused. Rather, her comment was regarding children who have been abused in general. Dr. Robinson testified that she had not met either of the alleged victims and did not know the particulars of this case.

Moreover, before Dr. Robinson testified, the trial court admonished the jury that Dr. Robinson's testimony "is not, I repeat, is not evidence that the defendant committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not Jane Doe I's conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of her testimony." Further, the jury was instructed pursuant to CALCRIM No. 1193 as follows:

> "You have heard testimony from Dr. Randall Robinson regarding the Child Sexual Abuse Accommodation Syndrome. Dr. Randall Robinson's testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not Jane Doe I and Jane Doe II's conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of their testimony."

It is presumed that the jury followed this instruction. (People v. Coffman and Marlow (2004) 34 Cal.4th 1, 83.)

Under these circumstances, it is highly unlikely that the jury would interpret the disputed testimony as an expert opinion that Jane Doe I and Jane Doe II were credible. Dr. Robinson's testimony pertained to abused children's behavior in general, Dr. Robinson had not met either alleged victim and was unfamiliar with the case, and the jury was correctly instructed on the limited use of CSAAS testimony. Accordingly, it is not reasonably probable the jury would have reached a result more favorable to appellant in the absence of this testimony. (People v. Watson (1956) 46 Cal.2d 818, 836; People v. Bothuel, supra, 205 Cal.App.3d at p. 589.)

(Ex. A, pp. 3-6).

### 2. Federal Standard.

Expert witnesses may testify if they are qualified and if their testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. United States v. Amaral, 488 F.2d 1148, 1152–53 (9th Cir.1973). Expert testimony should not be permitted if it concerns a subject improper for expert testimony, for example, one that invades the province of the jury. Id. at 1153 (expert testimony on the unreliability of eyewitness testimony properly excluded). Credibility is a matter to be decided by the jury. See United States v. Barnard, 490 F.2d 907, 912–13 (9th Cir.1973) (trial court properly excluded psychiatric and psychological testimony as to credibility of codefendant, a prosecution witness). Accord United States v. Awkard, 597 F.2d 667, 671 (9th Cir. 1979).

### 3. Analysis.

Respondent correctly contends that, for purposes of AEDPA review, there is no "clearly established" federal law regarding the admissibility of expert witness testimony. Generally, the admission of evidence in a state trial does not raise a cognizable federal habeas issue:

The Supreme Court has made very few rulings regarding the admission of evidence as a

8

1
2
3
violation of due process.  Although the Court has been clear that a writ [of habeas corpus] should be issued when constitutional errors have rendered the trial fundamentally unfair [Citations], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

4
Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).

5      Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the

6   admission was fundamentally unfair and resulted in a denial of due process.  Estelle, 502 U.S. at 72;

7   Pulley v. Harris, 465 U.S. 37, 41 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries

8   v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), cert. denied, 510 U.S. 1191 (1994); Gordon v. Duran,

9   895 F.2d 610, 613 (9th Cir.1990).  However, the failure to comply with state rules of evidence alone is

10   neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.

11   Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991).  Only if there are no permissible

12   inferences that the jury may draw from the evidence can its admission rise to the level of a due process

13   violation.  Id. at 920.  Intent is a permissible inference that the jury may draw from the evidence of

14   prior bad acts.  See, Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir. 1999).

15      The gravamen of Petitioner's claim is that the admission of the challenged expert's testimony

16   improperly invaded the province of the jury by essentially, and impermissibly, asking the jurors to

17   accept the expert's determination that the victims' testimony was truthful.  Petitioner directs the

18   Court's attention to the expert's testimony that when many children will "lie by omission" in failing to

19   report sexual abuse, but when they do, their report is usually valid.

20      Federal courts have found error when construing the Federal Rules of Evidence if the expert

21   testifies that the victim himself or herself was telling the truth about the sexual abuse.[2]  See, e.g.,

22   United States v. Binder, 769 F.2d 595, 602 (9th Cir. 1985)("The testimony of the experts…was not

23   limited to references to psychological literature or experience or to a discussion of a class of victims

24   generally.  Rather the experts testified that these particular children in this particular case could be

25

26
27
28
[2] The type of error identified in Binder is distinct from the type of error that justifies federal habeas corpus relief in that the latter requires a showing that the state inmate's federal constitutional rights were violated, not merely that an evidentiary error occurred. However, the analysis in Binder and other cases distinguishing Binder provides assistance in understanding when, if ever, the admission of expert testimony in a state criminal proceeding might rise to the level of a cognizable federal habeas claim.

1    believed.  The jury in effect was impermissibly being asked to accept an expert's determination that

2    these particular witnesses were truthful.").

3           However, where the expert's testimony does not focus on the truthfulness of the *specific*

4    witnesses but rather on "general behavior characteristics that may be exhibited in children who have

5    been sexually abused," i.e., to a "class of victims generally," such testimony is permissible and does

6    not invade the province of the jury as the finder of truthfulness and veracity.  United States v. Hadley,

7    918 F.2d 848, 852 (9th Cir. 1990); United States v. Antone, 981 F.2d 1059, 1062 (9th Cir. 1992);

8    United States v. Bighead, 128 F.3d 1329, 1330-1331 (9th Cir. 1997). A similar distinction has been

9    drawn in the context of federal habeas corpus review with the same result.  See Duncan v. Adams,

10   2006 WL 2472787, * 3-4 (E.D. Cal. Aug. 24, 2006).

11          Here, as conceded by Petitioner and as noted by the 5th DCA, the expert did not testify

12   regarding her knowledge of these particular victims, but rather regarding the general class of child

13   victims of sexual assault.  Indeed, the expert expressly indicated that she did not know anything about

14   the victims themselves or their particular cases.  Hence, it is difficult to conceive how such testimony

15   about the general category of child victims of sexual assault could possibly be construed as a statement

16   or opinion about the veracity of the specific victims in this case.  Accordingly, even assuming that

17   "clearly established federal law" exists on this issue, the claim must be rejected on its merits.  The 5th

18   DCA's adjudication, therefore, was not objectively unreasonable and the admission of expert testimony

19   was neither fundamentally unfair nor did it result in a denial of due process. Estelle, 502 U.S. at 72

20          The 5th DCA's decision appears to have turned on an alternative, harmless error analysis as

21   well.  At the end of its analysis, the 5th DCA cited People v.Watson 46 Cal.2d 818 (1956), the general

22   California standard for harmless error, in determining that any error in permitting the challenged

23   expert opinion was harmless.  This Court has conducted its own, independent harmless error review,

24   applying the correct federal standard.  In the Court's view, the error was harmless.

25           When a federal district court independently reviews the state court proceedings for harmless

26   error, it applied the standard in Brecht v. Abrahamson, 507 U.S. at 623, i.e., whether the error had "a

27   substantial and injurious effect or influence in determining the jury's verdict," in all cases, regardless of

28   the harmless error standard applied by the state court.  Bains v. Cambra, 204 F.3d 964, 977 (9th Cir.

1  2000).  And while there is no burden of proof *per se*, the district court will "look to the State to instill in

2  [the federal court] a 'fair assurance' that there was no effect on the verdict." <u>Payton v. Woodford</u>, 346

3  F.3d 1204, 1217 (9th Cir.2003) (citation omitted); <u>Shaw v. Terhune</u>, 380 F.3d 473, 478 (9th cir. 2003).

4        Here, the state court expressly pointed to the following facts: the expert was expressing an

5  opinion as to abused children in general, not to the specific victims in this case; before the expert

6  testified, the trial judge admonished jurors that the expert's opinion was not "evidence that the

7  defendant committed any of the crimes charges against him"; the court instructed the jury under

8  CALCRIM No. 1193 that the expert's testimony is not evidence and that the jurors could consider the

9  evidence only in deciding whether the victims' conduct was inconsistent with the conduct of someone

10  who has been molested and in evaluating the victims' credibility; and the expert indicated that she had

11  not met or evaluated the victims and was unfamiliar with the specifics of this case. Moreover, as

12  Petitioner concedes, the expert never specifically indicated a belief in the veracity of the victims. While

13  such circumstances do not mandate a finding of harmless error, the Court believes that the state court

14  adjudication provides a "fair assurance" that there was no effect on the verdict.  <u>Payton v. Woodford</u>,

15  346 F.3d at 1217.  Accordingly, the Court will recommend that the error, if any, did not have a

16  substantial or injurious effect on the jurors' verdict under <u>Brecht</u>, and was, therefore, harmless.

17        B.  <u>Statute of Limitations</u>

18        Petitioner next contends that the state court erred in denying Petitioner's statute of limitations

19  claim that the statutory period had expired as to Count 8 and as to the true finding of a multiple victim

20  allegation.  (Doc. 1, p. 4). This contention is also without merit.

21        1.  <u>The Superior Court's Opinion</u>.

22  The Superior Court denied Petitioner's claim as follows:

23      With regard to petitioner's first argument, that the statute of limitations had expired on Count 8

24  before he was charged, petitioner is incorrect.  Count 8 of the First Amended Information charges petitioner with committing a lewd act upon a child in violation of Penal Code § 288(a) on or about January 1, 1996 to June 30, 1997.  (Exhibit 1 to Petition, p. 6.)  Petitioner contends

25  that under Penal Code § 800, there was a six-year statute of limitations for all offenses punishable by a prison sentence of eight years or more, and under this statute, the statute of

26  limitations expired on June 30, 3002.  He acknowledges, however, that the Legislature enacted a new statute of limitations in January of 2001 that extended the limitation period for violations

27  of Penal Code § 288(a) from six years to ten years.  (Penal Code § 803(h).)

28      Yet petitioner also points out that the Legislature repealed section 803(a) in January of 2005

11

and enacted a new ten-year statute of limitations for sex offenses in Penal Code § 801.1. Petitioner apparently contends that the newest ten-year statute under section 801.1 is not a valid extension of the statutory time period for sex offenses because, under section 803(a), "Except as provided in this section, a limitation of time prescribed in this chapter is not tolled or extended for any reason."  (Penal Code § 803(a).)  Therefore, petitioner contends that, since the new statute under section 801.1 was not included in section 803, it was not a valid extension of the original six-year statute of limitations under section 800.  As a result, he concludes, the statute of limitations had already run on Count 8 by the time he was charged, and his conviction on that count was in error.

However, petitioner's contention is misplaced.  As petitioner correctly notes, on January 1, 2001, the Legislature extended the statute of limitations from six years to ten years under Penal Code § 803(a)(1).  Therefore, to the extent that petitioner argues that the extension of the statutory time period was inconsistent with section 803(a)'s requirement that all extensions must be contained within section 803, petitioner is incorrect.  Section 803(h) is part of section 803, and thus it was a valid extension of the statutory time period.

Also, although the Legislature later moved the ten-year statute to another code section, the Legislature did not further extend the ten-year statute when it moved the statute of limitations from section 803(h) to section 801.1.  Instead, the statute remained ten years, and thus there was no violation of section 803(a)'s requirement that any extensions of the statute must be contained in section 803.  As the Court of Appeal observed in <u>In re White</u> (2008) 163 Cal. App.4th 1576,

The rule is settled that reenactment by a new statute of any existing statute in substantially the same terms repeals by implication only those provisions of the existing statute omitted by reenactment.  [Citations.]  The cases sometimes refer to simultaneous repeal and reenactment [citations], but the term is a misnomer, for "the courts will construe the unchanged provisions as being continuously in force" [citations].  If a new statute repeals an existing statute and "they both legislate upon the same subject, and in many cases the provisions of the two statutes are similar and almost identical," and "there never has been a moment of time since the passage of the [existing statute] when these similar provisions have not been in force," "the new act should be construed as a continuation of the old with the modification contained in the new act." [Citation.] (<u>Id</u>. at 1581-1582.)

Thus, while the Legislature did move the ten-year statute from section 803 to section 801.1, it did not substantively change the content of the statute or extend the period of limitation beyond the ten-year period that was already contained in section 803 since January of 2001.  Petitioner does not allege that the statute of limitations had already expired by January of 2001, when the statute was originally extended from six years to ten years, so petitioner has failed to show that the extension of this statute was a violation of the bar against ex post facto punishment.  Nor has petitioner demonstrated that moving the ten-year statute from section 803 to section 81.1 somehow made the statute invalid.  Therefore, petitioner's first contention is without merit.

(LD 8, pp. 2-4).

       2.  <u>Federal Standard</u>.

    Article I, § 10 of the U.S. Constitution provides: "No State shall ... pass any ... ex post facto law."  The Ex Post Facto Clause prohibits the states from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." <u>Weaver v. Graham</u>, 450 U.S. 24, 28 (1981), <i>quoting</i> <u>Cummings v.</u>

1   Missouri, 71 U.S. (4 Wall.) 277, 325-26 (1866). "[T]he focus of the ex post facto inquiry is not on

2   whether a legislative change produces some sort of 'disadvantage,' ... but on whether any such change

3   alters the definition of criminal conduct or increases the penalty by which a crime is punishable."

4   California Dep't of Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995).

5          The ex post facto clause prohibits a state from enacting a law that imposes additional

6   punishment for a crime than the punishment was when the defendant committed the crime.  Weaver,

7   450 U.S. at 28.  A law violates the ex post facto clause under three circumstances: (1) when it punishes

8   an act which was not a crime when it was committed; (2) when it makes a crime's punishment greater

9   than when the crime was committed; or (3) when it deprives a person of a defense available at the time

10  the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719 (1990).

11               3. Analysis.

12         Generally, "a state court's failure properly to apply a state statute of limitations does not violate

13  due process or, indeed, any other provision of the Constitution or a federal statute." Loeblein v.

14  Dormire, 229 F.3d 724, 726 (8th Cir.2000). Thus, to the extent that Petitioner is contending that the

15  state court's interpretation of and application of its own statutes of limitation was erroneous, he fails to

16  state a cognizable federal habeas claim since the claim involves only a question of state, not federal,

17  law.  Estelle, 502 U.S. at 67. And, as mentioned, this Court is bound by the state court's interpretation

18  of its own laws. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989). The Superior Court

19  discussed at length the reasons why Petitioner has not established that the state courts misapplied

20  California law.  Accordingly, the Court is bound by that determination.  Id.

21         To the extent Petitioner is contending the extension of the modified statute of limitations to his

22  crimes was a violation of federal ex post facto protection, he is mistaken.  A claim based on a statute of

23  limitations may raise ex post facto concerns when time-barred prosecutions are revived by statute

24  because "after ... the original statute of limitations had expired, a party ... was not 'liable to any

25  punishment' " and because the resurrection of a prosecution after the statute of limitations has expired

26  violates the Ex Post Facto Clause of the United States Constitution, because a revival "eliminate[s] a

27  currently existing conclusive presumption forbidding prosecution and ... permit[s] conviction on a

28  quantum of evidence where that quantum, at the time the new law is enacted, would have been legally

1    insufficient." Stogner v. California, 539 U.S. 607, 613, 615, 123 S.Ct. 2446 (2003).  In Stogner, the

2    United States Supreme Court found a law unconstitutional when it was enacted after the expiration of a

3    statute of limitations and when it revived the prosecution. Stogner, 539 U.S. at 614-15. The Court

4    concluded that it was a classic ex post facto law and was no different than a statute that authorizes

5    punishment for an act that was not illegal at the time it was committed. Id.

6          The critical element in Stogner was the fact that the amendment in question became effective

7    *after* the statute of limitations had already expired. Stogner, 539 U.S. at 618-19. The Court observed

8    that the evils sought to be avoided by the ex post facto clause were visited upon Mr. Stogner because

9    he went years after the statute of limitations had past under the belief that he would not be prosecuted,

10   and there was an irrebuttable presumption that one is prejudiced under such a belief.  Id. at 611. Put

11   another way, Stogner distinguished between reviving prosecutions where limitations periods have

12   already expired, which it held unconstitutional, and extensions of unexpired statutes of limitations,

13   which the Court expressly stated its holding did not affect.  Id. at 618.

14         Petitioner's case falls in the latter category.  Penal Code § 803(h) was enacted while the

15   limitations period was still running on the charges against Petitioner.  Stogner expressly stated it was

16   not striking down extensions of unexpired limitation periods.  See id . at 618-19. Therefore, the

17   Superior Court's determination that Penal Code § 803(h) did not violate the ex post facto clause was

18   not "contrary to or an unreasonable application of clearly established federal law, as determined by the

19   Supreme Court of the United States." 28 U.S.C. § 2254.

20         C.  Insufficient Evidence of Duress

21         Petitioner next contends that insufficient evidence was presented as to the issue of duress such

22   that the convictions in counts two and three must be reversed.  Again, this contention lacks merit.

23              1.  The Superior Court's Opinion.

24         The Superior Court rejected Petitioner's claim as follows:

25         Next, petitioner has also argued that there was no evidence that he used any threat of force,
           violence, danger or retribution during the sexual assault on Jane Doe I, and therefore the court
26         should overturn his conviction on Counts 2 and 3 under Penal Code § 261.  Penal Code §
           261(a) defines "rape" as "an act of sexual intercourse accomplished with a person not the
27         spouse of the perpetrator, under any of the following circumstances: …Where it is
           accomplished against a person's will by means of force, violence, duress, menace, or fear of
28         immediate and unlawful bodily injury on the person or another."  (Penal Code § 261(a)(2).)

14

Also, section 261(b) defines "duress" to mean "a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted.  The total circumstances, including the age of the victim, and his or her relationship to the defendant, are factors to consider in appraising the existence of duress."  (Penal Code § 261(b).)

Here, based on the documents provided by petitioner, it appears that the petitioner threatened to send the victim back to live with her mother if she did not submit to his sexual advances. (Exhibit 3 to petition, pp. 1513-1514.)  Petitioner contends that this threat was not sufficiently serious to constitute duress or hardship under Penal Code § 261, because the victim had a good relationship with her mother and she would not have considered it a serious punishment to be sent back to live with her.  Yet the record shows that the victim was only 12 or 13 years old at the time of the assault, that she was the daughter of the petitioner, and that the petitioner pressured her by telling her that God wanted her to submit to his demands.  (Ibid.)  Under these circumstances, it is certainly possible that the victim felt that she had no choice but to consent to petitioner's advances.

Also, without the full record of the proceedings, it is impossible for the court to determine whether or not there was other evidence that might have caused additional pressure on the victim, such as a difficult relationship with her mother or other factors that might have caused her to fear being sent back to her mother.  It is petitioner's burden to present all relevant transcripts and documents to support his claims, and if he fails to do so the court cannot grant the relief requested.  (In re Clark (1993) 4 Cal.4th 750, 781, fn. 16.)  Here, petitioner has presented only limited portions of his trial transcripts that do not give a full picture of the testimony on the issue of duress.  For example, there is no testimony regarding the relationship between the victim and her mother, and whether the victim might have had reasons to fear being sent back to live with her mother.  Therefore, the petitioner has failed to establish that there was insufficient evidence to support the conviction on Counts 2 and 3.

(LD 8, pp. 5-7).

2. Federal Standard.

The law on sufficiency of the evidence is clearly established by the United States Supreme Court.  Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows:  "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).  Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief.  Jackson, 443 U.S. at 324.   Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335,

15

338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'"  See id., quoting Jackson, 443 U.S. at 319.  Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations.  See id. at 957-958.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  However, mere suspicion and speculation cannot support logical inferences.  Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference.  Juan H., 408 F.3d at 1274.  Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case.  Id. at 1275.[3]

Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).  This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts.  Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court determinations of

---

[3] Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims.  See Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004); Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir. 2005).

legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption.  Sumner v. Mata, 455 U.S. 539, 597, 102 S.Ct. 1198 (1981).

More recently, in Cavazos, v. Smith, __U.S. __, 132 S.Ct. 2 (2011), the Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Cavazos, 132 S.Ct. at 3.

> "Jackson says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  443 U.S., at 319, 99 S.Ct. 2781.  It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 326, 99 S.Ct. 2781.

Cavazos, 132 S.Ct. at 6.

3.  Analysis.

Petitioner argues that the prosecution relied on an improper theory of hardship as meeting the element of duress, and, because the theory relied upon was improper, insufficient evidence was presented on the issue of duress.  (Doc. 1, p. 5).  The Court disagrees.

Initially, the Court notes that the Superior Court applied the proper federal standard under Jackson.[4]  Accordingly, the only question is whether the state court's application of this standard was

---

[4] To the extent that the Superior Court's opinion does not expressly cite the Jackson v. Virginia standard in analyzing the sufficiency claims herein, it must be noted that, long ago, the California Supreme Court expressly adopted the federal Jackson standard for sufficiency claims in state criminal proceedings.  People v. Johnson, 26 Cal.3d 557, 576 (1980). Accordingly, the state court is presumed to have applied the correct legal standard, and, therefore, this Court's only task is to determine whether the state court adjudication was contrary to or an unreasonable application of that standard.

objectively reasonable.  The Court concludes that it was.

The Superior Court pointed out that state law defines duress to mean "a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted."  Under California law, the age of the victim and his or her relationship to the defendant are factors to consider in appraising the existence of duress.  Cal. Pen. Code § 261(b).  The Superior Court went on to note that the evidence showed the Petitioner threatened to send the victim back to live with her mother if she did not submit to his sexual advances; that the victim, at the time was only 12 or 13 years old; that she was Petitioner's daughter; and that Petitioner told her that God wanted her to submit to his demands.  Although there was no testimony at trial that living with her mother would have been, by itself, a sufficient circumstance to constitute a "direct or implied threat of...danger, or retribution" sufficient to cause a reasonable person to acquiesce to Petitioner's sexual demands, when considered in conjunction with the victim's age, her relationship of dependence and trust on her father, and his statement that the victim should submit to Petitioner's demands because that was what God wanted her to do, a reasonable juror could have concluded that, drawing all reasonable inferences in favor of the prosecution, such evidence was sufficient to support a finding of duress as defined by California law.

D.  Insufficient Evidence of Age

Petitioner also contends that the aggravated assault charge in count 3 must be reversed because insufficient evidence was presented to show that the victim was under the age of 14.  (Doc. 1, p. 5). This contention is likewise without merit.

1.  The Superior Court's Opinion.

The Superior Court rejected Petitioner's claim as follows:

Petitioner has also argued that the evidence shows that the victim was not under the age of fourteen at the time of the assault alleged in Count 3, and therefore his conviction of violating Penal Code § 269 should be overturned.  He contends that the victim testified that she was fourteen at the time of the assault, and that her statement to the police that the assault occurred three weeks before her interview with police shows that she was not under fourteen when the assault occurred.  He points out that the victim's fourteenth birthday was October 1, 2006, and that she spoke with the police on November 6, 2006, so she must have been fourteen when the assault occurred three weeks earlier.

18

Again, however, petitioner has not presented a complete record of the victim's testimony, nor has he presented all of the officer's testimony regarding the victim's statements to him.  It is possible that the victim testified about other incidents that were prior to her fourteenth birthday, or that there was other evidence indicating that the assault occurred before she turned fourteen.  It is petitioner's burden to present a full record to the court to establish his claims.  (In re Clark, supra, at 781.)  Since he has failed to do so, he has not established that his conviction for violating Penal Code § 261 was not supported by the evidence.

(LD 8, p. 7).

    2.  Analysis.

Again, the Superior Court applied the correct federal standard.  In the Court's view, the state court's adjudication was not an unreasonable application of Jackson.  In count three, Petitioner was charged with multiple violations of Cal. Pen. Code § 269(a)(1), which requires, inter alia, that the victim be under the age of fourteen.  Jane Doe I's fourteenth birthday was October 1, 2006.  (RT 145).  The information charged that the multiple incidents occurred between September 2, 2006 and October 15, 2006, i.e., before the victim's fourteenth birthday.  (CT 491).  At trial, the evidence, as summarized by the prosecutor in closing, established at least twenty incidents of sexual assault on the victim.  This evidence included the victim's testimony that Petitioner had sex with her for the first time just before the victim's freshman year, i.e., before the victim's thirteenth birthday.  (RT 145-150; 150-163-167).  The victim testified that Petitioner sexually assaulted her more than twenty times, including his days off from work.  (RT 165-166; 171-173).  The victim testified that these events took place when she was "approximately" thirteen.  (RT 173).  The victim also testified that the last sexual assault took place just before she moved to a new house, and that she moved to the house in September 2006.  (RT 193-194).  As Respondent argues, reasonable jurors could have concluded Petitioner was guilty of at least one of these multiple sexual assaults that occurred prior to October 1, 2006; hence, sufficient evidence was presented to support the conviction.

Moreover, Petitioner's contention relies upon selected pieces of evidence that, if viewed in the light most favorable to Petitioner, could arguably support an acquittal.  However, as Respondent correctly points out, that is not the standard under Jackson.  To the contrary, the state court must, as it did here, look at the totality of the evidence and draw all inferences in favor of the prosecution. For the foregoing reasons, the Court concludes that the state court's adjudication of this issue was not objectively unreasonable.

19

E. <u>Ineffective Assistance of Trial Counsel</u>

Finally, Petitioner argues that he was denied the effective assistance of counsel because trial counsel failed to raise the statute of limitations argument at trial and because appellate counsel failed to raise on appeal the statute of limitations issue, the two insufficiency claims, and trial counsel's alleged ineffectiveness.  (Doc. 1, pp. 4-5). This contention also lacks merit.

1. <u>The Superior Court's Opinion</u>.

The Superior Court rejected Petitioner's claim as follows:

> Also, to the extent that petitioner contends that his trial counsel was ineffective for failing to raise the statute of limitations issue in his criminal case, petitioner has not shown that his counsel acted in an objectively unreasonable manner, or that his conduct caused any actual prejudice to his defense.  (<u>Strickland v. Washington</u> (1984) 466 U.S. 558, 590-692.)  As discussed above, petitioner's argument that the statute of limitations had run on Count 8 is without merit, and therefore his counsel did not cause any harm to his defense by failing to raise the argument.  Thus, petitioner has failed to show ineffective assistance by his trial counsel.
> …
> Finally, petitioner alleges that he received ineffective assistance from his appellate counsel because his appellate attorney failed to raise any of the above issues on appeal.  However, as discussed above, petitioner has failed to show that any of his other contentions have merit, so he has also failed to demonstrate that his appellate counsel was ineffective for failing to raise those issues in his appeal.  Nor has petitioner demonstrated any prejudice from his counsel's failure to raise the issues.  Consequently, petitioner has failed to state a prima facie case for relief.

(LD 8, pp. 4-5, 7-8).

2. <u>Federal Standard</u>.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to <u>Strickland 's</u> two-pronged test. <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir.1989); <u>United States v. Birtle</u>, 792 F.2d 846, 847 (9th Cir.1986); <u>see also</u> <u>Penson v. Ohio</u>, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the <u>Strickland</u> standard does not apply and prejudice is presumed; the implication is that <u>Strickland</u> does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional

norms. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. <u>Id</u>. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the appeal. <u>Id</u>. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th Cir.1998).

   With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general <u>Strickland</u> standard for ineffective assistance.  <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold."  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Knowles</u>, 556 U.S. 111, 129 S.Ct. at 1420.  In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable.  <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003). Moreover, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

   3. <u>Analysis</u>.

   The Superior Court, applying the appropriate federal standard under <u>Strickland</u>, correctly and logically concluded that, in the absence of any showing by Petitioner that his various claims of trial error have merit, counsel's representation at either the trial or appellate level cannot be deficient for failing to raise these meritless issues.  Thus, <u>Strickland</u>'s first prong has not been met.  Moreover, extending that reasoning to <u>Strickland</u>'s second prong, Petitioner also cannot show prejudice for his counsel's failure to raise issues that have no legal merit.  Accordingly, the state court's rejection of Petitioner's claim was not objectively unreasonable.  Therefore, the claim should be denied.

///

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:  __**February 24, 2014**__               _____**/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE